Good morning, and may it please the Court. I'm Tom Stenson, here on behalf of the Class of Appellant Foster Children. Thirty years after Lipscomb v. Simmons, the State of Oregon is again arguing to the Circuit that they do not have a constitutional duty to care for certain groups of foster children. In Lipscomb, this en banc Ninth Circuit, citing DeShaney, held that Oregon owes a constitutional duty of care once the State assumes wardship of a child. Under Oregon law, a ward is a person within the jurisdiction of the juvenile court, and that jurisdiction continues even though the child is receiving adequate care from the person having physical custody of the child. Thus, a child remains a ward of the State even when a court grants a parent temporary physical custody of the child for a limited and specified period. And like in DeShaney, Oregon law provides that wardship terminates, and, therefore, that the State's constitutional obligation terminates only when the juvenile court dismisses their case and the child is placed in the permanent physical and legal custody of a natural or adoptive parent. Under Oregon law, when the State chooses to place a child in a parent's home, the State retains control over every element of that placement. The State chooses which parent the child stays with, to the exclusion of the other parent, to the exclusion of grandparents and other natural supports. The State chooses where the child stays during that time, what medical care, what mental health care, what other services the child gets during that time. The State also has the discretion to end the parental placement at any time. I have a question about your settlement agreement, your second category of children that this dispute focuses on, is children who have been removed are in ODHS's legal custody but are not in ODHS's physical custody because they are placed in home with a parent or legal guardian? Yes. All the briefing seems to be focused on the placement with the parent. Yes. Are you not arguing the legal guardian piece of that second category of children or not? So all the children that we are talking about have the State as their legal guardian. So in, oh, the parent or legal guardian element. I'm just saying, if you're on a trial home visit with a legal guardian instead of a parent, is that group of children part of this appeal? Because all the briefing seems to be focused on trial home visit with a parent. I see what you're saying, yes. Yeah. I think I can't, I think to the extent that the State retains legal guard, or legal custody of the child, that would be an instance. That would moot that category? Yes. Okay. Thank you. Yes. So appellant foster children showed that those parental placements failed about half the time. The State of Oregon's extensive control over all decisions surrounding these placements, with which parent, where, how, with what services, and for how long, does not resemble in any way the State of Wisconsin's decision in DeShaney to simply withdraw from any supervisory role and leave the family unit to its own devices. In the Ninth Circuit, we have more than 30 years of repeated findings that children who are in foster care have a special relationship with the State such that the State has substantive due process obligations to them. There is not a single case in this entire circuit in those 30 years that has found that a child who is in the legal custody of the State does not have a special relationship with the State in some sense. Let me ask you, Counsel. So legal custody is defined. And as I understand it, tell me if I'm wrong, that the ward is defined, and it's the same as ward, the definition of a ward for, say, for example, if it's a prisoner. So they're exactly the same, which is not what you had in the DeShaney case. Correct. So I think that is a crucial distinction between the DeShaney case and the present matter. In the DeShaney case, poor Joshua was neither in the physical custody nor the legal custody of the State during the time when he was injured. And that's important because the legal custody here is specifically defined. And it is defined such that the children, even though they're in temporary custody of their parents, are wards. And wards indicate that it doesn't lift the responsibility of the State to really care for them in almost every necessary need that they may have. Am I right? Absolutely, Your Honor. That is correct. And that is a distinction that the Court completely missed in rendering its decision. And it created reversible error by doing so. The record in this case was replete with evidence of how the State's legal custody pervaded any relationship with the parent during these temporary visits. For instance, the named plaintiffs, Wyatt and Noah, were placed with their mother, and the State ordered them to live with the mother's former foster mother in Portland. And then in the middle of that stay, the mother or the DHS, excuse me, DHS changed their mind and ordered the mother to go live in Salem so she could get services in Salem. So the situation in Descheny was that Wisconsin just withdrew from the scene. They were not involved. Joshua was at home with his father, and that was the only relationship at stake. In these temporary parental visits, the State is pervasively in charge of the whole process. They can end it at any time, and they frequently do. Let me ask you something. Obviously you know, as well as anyone having been involved in these cases for a long time, that there is a fundamental constitutional substantive due process right of the parent to have guidance, control over the child. I mean, that's as fundamental as anything else in due process. Is that why we have this issue? Because they are, although still in legal custody of the parents, that the parents, once they have custody, is there some issue about whether or not they should then have control, which competes with the control that the government has as defined by statute? Is that the problem here? Is that what perhaps the issue was before the district judge? So part of the problem with analogizing a situation where a child is in the legal custody of the State with cases like Ducheney where a child is not, is that the parental control, while the State has legal custody, is essentially eradicated. So, for instance, we pointed the Court in our briefing to a case saying that Oregon can force foster children to be vaccinated over the objections of their natural parents while they are in foster care. So that decision-making authority to make health care decisions, the elemental, fundamental rights of parents, that is extinguished. The child's... Okay, so that's my point, is that we start with, and a lot of the case law, you know as well as anybody, again, that there is a constitutional right that parents have, and it's a fundamental right. So I thought perhaps that was the reason that there was this conflict maybe by the district court judges to, once you put them back in the custody, temporary custody of the parents, the parents then gain some rights over the children. There is no legal distinction between a child who is in the legal custody of DHS who is placed in a parent's home and a child in the legal custody of DHS who is placed in a foster parent's home or a congregate care facility. They are all the same legally. They are all in the legal custody of the state, and the state can pull them out from one placement, can pull them out of a placement with the parent and put them in with a foster parent or put them into a congregate care facility, as indeed happened to numerous of our named plaintiffs. Thank you. The district court found that your complaint was focused a lot on children in foster care, and there are many, many references throughout this lengthy complaint about children in foster care. Are there specific parts of the complaint where you're saying that includes children temporarily placed with their parents? Yes, Your Honor. Where do we look for that? Is that just on individual allegations as to specific named plaintiffs, or where do we find that? So briefly, we talked a lot about children who are in substitute foster care, meaning they're placed with a foster parent or congregate care, because that represents the majority of children in foster care. But we did speak to the needs of children who are placed with parents. In the complaint, we raised specific allegations about one of our named plaintiffs, Unique, who was placed on a temporary home visit with a parent, and that visit went all kinds of wrong. It ended up in a screaming, expletive-laden rant by the mother against the child, which deeply traumatized Unique. And following that failed placement, she spent months in treatment facilities in Oregon and out of State. It was a real shocking abandonment of this child to a placement that she had no business being in. There was no basis for putting her with her mother. Everyone agreed that she did not. Her mother was nowhere near ready to take care of her at that time. And Unique was the one who ended up being traumatized by the State's ---- So when you say a child is in foster care, you are not including temporary home visits with the parent, or you are? Foster care includes children who are in temporary home visits with the parent, which the district court actually found in the class certification opinion. The district court listed out different types of children in foster care, including children on temporary home visits, in the district court's August 2022 order. I suspect your opposing counsel is going to come up and look at the language in DeShaney and Patel and other cases that say it has to be akin to incarceration. What's your response to that? Well, so one answer is, for 30 years, this court has repeatedly compared the treatment of children in foster care to people who are incarcerated. So, for instance, in Gibson v. Merced County Department of Human Resources, this court directly compared the authority of the prison system to move prisoners from prison to prison within their own system to the authority of a Department of Child Welfare to move children from home to home, and saying that a child had no more right not to be moved from foster home A to foster home B than a prisoner had a right to be moved from prison A to prison B. And did any of those include parents? I don't know if any of them specifically included parents. The most on-point case regarding visitation with parents of children who are in the legal custody of the state is, of course, Cox. And that is a case where two children who were brought into foster care were allowed to have a visit with their father, and during that visit, their father murdered them. Now in that case, this court specifically held that, quote, where children are in state custody, the 14th Amendment's Substantive Due Process Clause protects their liberty interest in social worker supervision and protection from harm inflicted by a third party. Now, in Cox, the only third party who harmed the children was the parent. So I think Cox stands for the proposition that a parent, that the state owes a duty to protect children against abuse, including from their own parents, while the children are placed in the legal custody of the state. And that has been the repeated nexus of all special relationship cases involving, of which there are many in the Ninth Circuit, that legal custody triggers the state's legal obligations to the child. That's from BK Xrel Tinsley v. Snyder. In Henry A., this court stated that the special relationship arises where the state assumes some responsibility for the plaintiff's safety and well-being. It does not need to be total. And the Tamas opinion stated that Since we're running out of time, let me ask you quickly, are you arguing that children who are not removed from their parents are eligible for the state-created danger exception? If the state has created the danger, although in that case, if the state has not actually created a danger, has not changed the circumstances, it might very well be factually that that might not arise. But it is certainly possible, as I think Mergia v. Langdon indicates, for a state-created danger to arise from the state's failure to protect a child from a  Okay. So, do you think that the state has enhanced the risk of danger if it's never removed the child from the parent's home? In that circumstance, I would surmise that in most cases there is not likely to be a state-created danger issue if there's never been a removal. Okay. Let me see if my colleagues have any more questions. No? Okay. I'll give you two minutes for rebuttal. Plus, you have about a minute left. Thank you so much, Your Honor. May it please the Court and Counsel Christopher Perdue for the State Defendants. This Court should affirm the district court's judgment for two reasons. First, the district court properly viewed this dispute as one about the scope of plaintiff's allegations vis-a-vis the due process clause, not as one about contract interpretation in a fully formed and integrated settlement agreement. And second, the district court properly resolved the dispute when it held that children in the physical custody of their parents were not in the class of children at issue in this case. I'll start with DeShaney. In DeShaney, the U.S. Supreme Court held that a child cannot Let me ask you a question. I'm looking at the district court's class certification order, and it says, membership in the general class is as follows. All children for whom the Oregon Department of Human Services has or will have legal responsibility and who are or will be in the legal or physical custody of DHS. It put an or in there and did not require physical custody. And then if I look at the complaint, you know, when it's describing as of March 30, or not the complaint, sorry, this is a class cert order still. As of March 31, 2019, there were 7,260 children in Oregon foster care. Twelve percent were on trial home visit status, meaning they were living with their parents or caregivers while DHS retained custody. So at least from this order, it seems like the district court included children living at home with their parents on a trial home visit. Yes, Your Honor. And we can't dispute that the word or is used in the initial class definition. However, throughout the litigation, the assumption of the parties, and I think even of the district court, was that the district court was not certifying this subset of children over whom the state has legal custody but not physical custody. But why, if there's the or is there in the class cert order, and the class cert order is saying children on trial home visits with parents are included in my definition of children in Oregon foster care? The best evidence is in a later discovery dispute that arose and that we describe in our briefing. Toward the end of trial preparation, the plaintiffs indicated that they wanted to admit evidence relevant to harm suffered by children in the physical custody of their parents. The defendants objected on relevance grounds, and the district court resolved this dispute by considering the plaintiffs' allegations and determining, first, that the plaintiffs didn't sufficiently allege that children suffered harm in the care of their parents, and that's at S.E.R. 21. And second, even if the... I don't see how a later discovery order undoes a class certification order, which defines the membership of that class. We don't maintain that it undoes the class certification order, but it did give rise to confusion between the parties, and I think even the district court, about what really the district court was certifying in the original class certification order. And that is the origins of this dispute on appeal. What set of children belong in the general class based on, on the one hand, the certification order, which, as Your Honor notes, says or, and on the other hand, the district court's resolution of this evidentiary dispute, where the only way to understand its ultimate conclusion is to assume that the district court did not think that children who are in the physical custody of their parents were part of the general class in this case. Let me ask you, though, why wasn't there a motion to amend, then? I mean, a motion to amend, because the words are still there. It's or. So, and if it's or, then you go back to the definition of what legal status is. And legal status defines the word ward. And those children are considered, those children, whether or not they are in the custody of their parents or outside the custody of their parents, are still, they are still under legal custody. They're required by the state to have, the state has significant obligations with respect to those children, as with all wards, including, of course, those wards that are in prison. There's no distinction, is there? A ward is a ward under legal custody. Even though, obviously, when the prisoners are in legal custody, because they have no, they have no control over their lives at all, the state has a 100 percent obligation. And with children, it's not so, because they're not, they're not incarcerated. But still, the definition is the same, isn't it? Your Honor, I'm not sure the definition is the same across those domains. Certainly the ---- Tell me, tell me why. Because the words in the statute appear to be the same with respect to the obligations of the state. Sure. And unless there's case law that distinguishes and said the words that are in the statute that define a ward are different for children, then they are the same. Your Honor, I don't know of a case that distinguishes directly children who are in the legal custody of the state and then incarcerated persons or persons who have been involuntarily civilly committed. But I can say that in the former, or the latter category of people over whom the state has complete control, those are the situations that Descheny and its progeny have analogized to. In a situation where the state has responsibilities and duties to children because they have been brought into the foster care system, but parents are exercising primary caregiving duties on a day-to-day basis. But what I'm, what I'm, and Descheny, you weren't dealing with statutes. The Supreme Court were looking at the situation, is this like a tort situation, possibility, and the court said, no, we're dealing with the Constitution, so it's not. But here, the state can and did take responsibility for the children in, as in their legal custody. And that definition is in the statute. And that requires that they have, or they, they have complete, you know, control over the children, even if they are in the custody of the parents temporarily. That's the way I look at it. Don't me I'm wrong. Your Honor, it's, for you to determine the best interpretation, obviously, of Descheny in these statutes, but I'd make two points. The first is a point that you mentioned during my friend's opening remarks. The due process rights of parents make them, as caregivers, different. That was an issue at Descheny. I think that was on the mind of the district court here. It's not the same to put a child in the care of a substitute caretaker than it is to put it in the care of a parent. They're just simply categorically different. If you disagree with me on that premise — Well, why, why is that the case? If you look at the Oregon statute with regard to children, once the state has legal custody, they have the authority to have physical custody and control of the child, to supply the child with food, clothing, shelter, and incidental necessaries, with education discipline, to authorize ordinary medical, dental, psychiatric, psychological, and other care. The parents don't have the authority to do that on these trial home visits. At any point, the state can withdraw the kids from the parent's home. That's true. I mean, Descheny was different because that child was never in the legal custody of the state. Well, let me make one distinction. I don't think it's as helpful to our position as maybe I would hope, but there was a temporary custody change in Descheny. That is, the child was put in the temporary custody of a hospital for three days. At the end of treatment, a committee decided whether to put Joshua back into the care of his father under a voluntary safety agreement with state services provided on a monthly basis or more frequently. And that is where state social service workers observed signs of abuse and harm in Joshua. So it's not as though the state dropped out of the picture in the way that my friend is describing in Descheny. In fact, the state was present at least on a monthly basis. Are you asserting that the state had legal custody of Joshua in Descheny? No. Joshua was never the ward of the state. But I'm also not aware of a case in this circuit that directly addresses this distinction. I will acknowledge that there are many cases in this circuit that describe in general terms the obligations of the state and the rights of children in their custody, but they never make the distinction that's an issue here. Let me ask you, counsel. So, you know, the hypothetical I gave to your friend is that there is obviously, and you're bringing it up again, there is a constitutional, fundamental constitutional right of parents to bring up their children. But you're not here on behalf of those parents. You're here on behalf of the state. And you're wanting to relinquish the responsibility. But the state has decided we want responsibility. We have defined them as wards in the broadest possible sense, which is not what you had in Descheny. So your concern is we don't want this responsibility. Isn't that it? While they're in the custody of the children. Maybe it's because, and I don't mean, I'm not saying that you're heartless, the state is heartless at all, but because maybe you don't have control. You can't control the parents. They have temporary control. And so what can we do? Are we supposed to sit there at the door and make sure they're not being abused? I can see your point of view. But it's not, it's, you're not protecting the constitutional right of the parents. Right. Your Honor, we're not standing in place of the constitution to defend the constitutional rights of the parents. That's true. But even in Oregon, by statute, the state recognizes and tries to promote services that are consistent with the due process rights of parents and legal guardians. And I think that is the balance that is difficult to strike in addressing this distinction. In most cases in the Ninth Circuit, the children at issue are fully removed from parental care and put into the foster care or substitute care system. And in those cases, we don't see allegations about harm suffered by children in the care of their parents. You're correct that the state of Oregon does not want to be heartless here. The state of Oregon promotes the general welfare.  That was in the biological mother's care who drowned the twins in the hotel. That's true. Why is it different if the state knows of a danger to the children, but knowingly places them with a foster parent or a biological parent? Why would the state-created danger exception apply? Why would it not apply? Two points. The state-created danger exception may apply under highly specific factual situations. It's a suit that would remain even to plaintiffs in this class if they, depending on the settlement agreement, but if people similarly situated suffered harm, for instance, in the care of their parents. Well, what about Unique? Unique's mother said she is not ready to have custody of Unique, but the state went ahead and put Unique with the mother. Why isn't that the state placing a child in a situation with a parent where there's a known danger? The standard for establishing liability under the state-created danger theory is, first, to establish that the state was aware of a risk of harm particularized to the plaintiff that otherwise wouldn't have existed. Second, that the state official was aware of that harm and was aware it was foreseeable. And third, that the state official was deliberately indifferent to the risk. Those kinds of allegations we do not see in this complaint. Even though we do have some allegations about an episode in the case of Unique and a mention of an episode in the case of Noah and Wyatt, what we don't see are the allegations setting forth the elements of the state-created danger theory. And that's important because, first, the district court correctly found that plaintiffs never pled that theory. And, second, even if they had pled that theory, it wouldn't have been the case. 531 says that Unique's mother's therapist had informed ODHS that Unique's mother was not ready to have Unique return to her care. You're now saying ODHS never received that information? I'm saying that the allegations I set forth in the complaint don't satisfy the requirements of the elements of the state-created danger exception. We don't see the state-created danger exception mentioned, and we certainly don't see the type of, you know, factor by factor allegations that you'd expect to see in a complaint invoking that theory. And the reason, I think, is that that theory would not be susceptible to class-wide resolution. It's the kind of theory that's best suited for individual cases where plaintiffs can allege specifically the harms at issue, the officials who were deliberately indifferent to those foreseeable harms. That's why the district court, I think, found that this theory wasn't sufficiently pled. And the district court was right on that point. But to get back to your question about Murguia. Well, I mean, I'm looking at the complaint, paragraph 78. It explicitly says, despite the fact that the mother's therapist had informed DHS that the mother was not ready to have Unique return to her care, DHS nevertheless returned Unique to her mother when they were unable to locate a therapeutic placement for her. Inexplicably, DHS simultaneously sought to dismiss the case, however, over Unique's attorney's objection. So why is that not knowledge on the part of the state? Well, Your Honor, if Unique brought an individual action under the state-created danger theory, that allegation would certainly be part of setting forth sufficient allegations under that theory. I see that I'm almost out of time. Can I finish my thought? Go ahead, please. Those allegations are not in this complaint. For that reason, the district court properly concluded that the complaint was in sufficient, and for those reasons, in addition, we'd ask this court to affirm the judgment. Let me see if my colleagues have any further questions. No, thank you very much. Okay. You have two minutes. Your Honor, when a child is placed with a foster parent, it is beyond dispute by both the parties and well-established under this case law. When a child is placed with a foster parent, that child is in the physical custody of the state, even though that foster parent wakes the child up in the morning, gets them breakfast, gets them on the school bus. State employees don't come out to the foster parent's house and take care of those routine duties. What makes the custody of the foster parent subject to the protections of substantive due process is the overarching legal responsibility of the state to make sure that one, that they've placed the child in an appropriate home, that they're providing appropriate services, that they're ensuring the safety of the child. How is that truly different from a placement that is with a biological parent that is still covered by that overarching legal authority of the state? The state still has that exact same authority to make sure that the child Address your opposing counsel's point about this evidentiary dispute. So this is just, there's no basis for this. The simplest answer, Your Honor, is that the parties stipulated to the definition of the general class in the settlement agreement at 2ER-288, or 228, excuse me, class means the general class certified by the court in its opinion and order dated August 17th, 2022. So if the state believed that the general class definition had somehow mutated over time, which is not Where is that in the settlement agreement? It's 2ER-228 is the page number. Okay. So it's in the definitions in the first section. There's a definition of class at the very top of the settlement agreement. So if the state had a problem with these. Yeah, but if you look above that, it says children in care means children who are in the legal and physical custody of ODHS. And then it goes on to say that there's a dispute between the parties as to whether that goes on to include other children. And so that's where the dispute is. So it's clear in the drafting of the settlement agreement that there was a dispute over whether children in care included children placed with their parents. But what the state has failed to produce, discovery, dispute, or no, that there is any time when discovery disputes can undermine the authoritative pronouncement of what a general class definition is. There is just no authority for that. It doesn't exist. It is not a legal concept. So when that dispute occurred, no one made an effort or the state didn't make an effort to amend the settlement. No. And the state had. Even though apparently there was some dispute about what the custody of the child was while they were in the parents' custody. The state had years in which it could have filed a motion to alter, amend, or even dissolve the class or to file a motion for partial summary judgment. If it wanted to on any of these issues. And I will note that in as early as our class certification briefing in 2019, we continued to push the issues of trial home visits. We had two different experts commenting on trial home visits in 2019. This was not an issue that fell away. This was an issue that remained present throughout the case. So we preserved that argument at all times. It continued to be a live issue in those proceedings. I think it's very important to acknowledge that the state does have an obligation when it places a child with a foster parent to make sure that that home is safe. That is the essence of the state-created danger in that context. And there is no reason, particularly since a parental home visit does not have to be with the original custodial parent, it could be with a parent with whom the child has not been living prior to the state's supervision of the child. The state has that same obligation not to put that child in danger. And if they place that child in a home where they are in danger, they violated their duties. I think your time has expired. And let me ask if my colleagues have any further questions. No, thank you very much. Thank you to both counsel for the very helpful arguments. Today we're adjourned.
judges: THOMAS, KOH, Silver